651 P.2d 892

**STATE of Arizona, Appellee,**

v.

**Michael Felton HILLIARD, III, Appellant.**

**No. 1 CA–CR 5376.**

Court of Appeals of Arizona, Division 1, Department C.

July 22, 1982.

Rehearing Denied Aug. 27, 1982.

Review Denied Sept. 28, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div. and Barbara A. Jarrett, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, James R. Hart, Deputy Public Defenders, Phoenix, for appellant.

## OPINION

CONTRERAS, Judge.

At issue is whether the trial judge's intrusions into the jury room and conversations with the jurors require reversal of appellant's convictions. We hold that they do and remand the case for a new trial.

Appellant Michael Felton Hilliard, III, was convicted of Count I, burglary; Count II, sexual assault; Count III, kidnapping, a dangerous felony; Count IV, sexual assault, a dangerous felony; and Count V, robbery. Appellant was sentenced to 10 years for Count I, 14 years for Count II, 21 years for Count III, 21 years for Count IV, and 14 years for Count V. The court ordered that Counts III and IV run consecutively and that Counts I, II and V run concurrently with each other and with Counts III and IV. Appellant's motion for a new trial was denied. Appellant has presented four arguments on appeal: (1) that the trial judge improperly communicated with the jury on two separate occasions; (2) that the trial judge improperly commented on the evidence; (3) that the trial judge erred in sentencing; and (4) that the appellant did not receive effective assistance from his trial counsel. We find the first issue dispositive, and reverse and remand.

### THE FIRST COMMUNICATION

The reporter's transcript of proceedings reflects that at the end of the first day of jury deliberation, the trial judge physically entered the jury room. We quote from the transcript:

(The following proceedings were held in the jury room at 4:50)

THE COURT: Ladies and gentlemen, I think we'll recess tonight, unless there's any reason that you think you need to stay a little longer for another ten minutes. Why don't we come back tomorrow at 9:00 o'clock. Please remember my admonitions.

I don't want you to go to the scene of the alleged crime, and I want you to especially remember not to talk this over with anybody else. You were chosen by the lawyers specifically to do the job. No one else. Don't ask anyone what you would do in such and such a case. This is strictly your job.

A JUROR: Can I ask one little question?

THE COURT: Okay.

A JUROR: I think it's going to relate to the other two jurors. A lot of people have been confused about the layout of the house, and these pictures don't help.

THE COURT: Remember, I told you that for whatever reasons all the evidence is before you. To bring in any more information—in essence, we'd have to reopen the whole case.

A JUROR: Okay.

THE COURT: So, we can't give you any more information. There's no more information we can give you.

A JUROR: Sir? May I say something?

THE COURT: Want you to know, we are making a record and—

A JUROR: I just—

THE COURT: And the defendant is not present nor his counsel.

A JUROR: This doesn't have anything to do with the case.

THE COURT: Off the record. (An off the record discussion ensued.)

THE COURT: Thank you. We'll see you tomorrow morning at 9:00 o'clock.

There is no indication in the record as to the length of the non-record discussion between the judge and jury, nor the subject matter of the conversation. There is no indication as to when, or how, appellant's counsel first learned of the incident. It could very well be that counsel had no knowledge of what transpired until the reporter's transcript of proceedings was prepared. Thus, as candidly recognized by appellee, the record does not show that appellant had an opportunity to voice his objection at the trial level. In short, the critical facts of this case are: (1) there was an actual physical intrusion by the judge into the jury room; (2) the communication was not clearly consented to by appellant or his counsel; (3) there was an off-the-record discussion between the judge and a juror in

the presence of the jury; and (4) there is no indication of what was discussed off the record.

## REVERSIBLE ERROR

The most important fact is the actual physical intrusion of the judge into the jury room during the course of deliberations. The only two Arizona opinions which have dealt with this situation have denounced this practice in the strongest terms. *See State v. Burnetts,* 80 Ariz. 208, 295 P.2d 377 (1956); *State v. Werring,* 111 Ariz. 68, 523 P.2d 499 (1974).

In *Burnetts,* in response to a jury inquiry, the trial judge took it upon himself to go to the door of the jury room and tell the jury that a particular exhibit had been withdrawn from evidence. A jury member then asked the judge a question about a recommendation of leniency, to which the judge responded. The meeting occurred without notice to counsel. The Arizona Supreme Court stated:

> ... There can be no question but that in the discharge of his official duty, the place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter.
> ... We find that in practically all of the reported cases appellate courts properly regard communications between the trial judge and jurors, relative to the trial, as of a more serious nature and more likely to have a prejudicial effect than communications between other court officials or attendants and jurors....
>
> It is impossible to promote confidence in the administration of justice unless the jury is kept free from outside influences. In the instant case, if the jurors desired a question answered or further instructions, the proper way to have handled the matter would have been to bring them back into open court with its attendant safeguards.

80 Ariz. at 211–212, 295 P.2d at 378–379. The court reversed and remanded for new trial.

In *Werring,* the jurors sent to the judge a note with three questions. The judge con-sulted with the attorneys and read the questions to them but refused to let the defense counsel read the written questions, refused to have a court reporter or clerk present, and made no reference to the event in his minute entries. The judge then entered the jury room to orally answer the jury's inquiries. Upon his return, he advised counsel that in addition to answering the original written questions, he had orally responded to further juror questions. The Arizona Supreme Court, citing *Burnetts,* stated:

> We condemn the conduct of the judge in as strong terms as is possible.

111 Ariz. at 69, 523 P.2d at 500. The court reversed and remanded for new trial.

In *State v. Robin,* 112 Ariz. 467, 543 P.2d 779 (1975), the jury, after retiring to deliberate, sent the judge questions which dealt with issues of fact. The judge did not go into the jury room, but did answer the questions from his notes and his recollection of the relevant testimony. The Arizona Supreme Court, citing *Werring* and *Burnetts,* peremptorily reversed and remanded for a new trial.

The issue presented here is whether the very strong condemnation of a judge's intrusion into the jury room expressed in *Burnetts* and *Werring* have been eroded by more recent decisions dealing with other forms of judge-jury communications. We do not believe that it has.

In *State v. Mata,* 125 Ariz. 233, 609 P.2d 48 (1980), the Arizona Supreme Court considered two communications from judge to jury, both made in court during trial but without notice to defense counsel. The court, while holding that the communications were not prejudicial and therefore not reversible error, reviewed the Arizona case law and stated the following general principles:

> The general rule in Arizona is that reversible error occurs when a trial judge communicates with jurors after they have retired to deliberate,[7] unless defendant and counsel have been notified and given an opportunity to be present. *State v.*

*Lamb,* 116 Ariz. 134, 568 P.2d 1032 (1977); *State v. Robin, supra; State v. Werring, supra; State v. Burnetts, supra.* While the cases cited by defendant do hold that prejudice need not be shown, all of these cases involved situations fraught with potential for prejudice to defendant,[8] wherein it was impossible to ascertain the impact of the communication upon the jury. *See also United States v. Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). Such circumstances warrant an irrebuttable presumption of prejudice. *See State v. Davis,* 117 Ariz. 5, 570 P.2d 776 (1977). Where it may be said, beyond a reasonable doubt, that there was no prejudice to the defendant, a communication between judge and jury outside the presence of defendant and counsel is harmless error. *See State v. Lawrence,* 123 Ariz. 301, 599 P.2d 754 (1979); *State v. Davis, supra. See generally Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

125 Ariz. at 240–241, 609 P.2d at 55–56. Of particular significance are the substantive distinctions set forth in the footnotes of *Mata.* We quote from the footnotes:

7. We note that none of the instant communications occurred after the jury retired to deliberate. This aspect of the general rule is derived from 17 A.R.S., Rules of Criminal Procedure, rule 22.3, which provides: "After the jurors have retired to consider their verdict, if they desire to have any testimony repeated, or if they or any party request additional instructions, the court may recall them to the courtroom and order the testimony read or give appropriate additional instructions. The court may also order other testimony read or give other instructions, so as not to give undue prominence to the particular testimony or instructions requested. Such testimony may be read or instructions given only after notice to the parties." We see no reason to be less concerned with a potential violation of defendant's rights if a communication occurs before the jury retires to deliberate.

8. Both *Burnetts* and *Werring* involved the actual physical intrusion by the judge into the jury-room, where he communicated orally with the panel on issues of fact and law. In *Robin,* the judge responded to questions of fact from the jury by answering from his notes and his recollection of testimony.

*Id.*

We do not believe that the foregoing detracts in any way from the holding of *Burnetts* and *Werring.* This is clear from fn. 8, in which the court pointedly distinguishes those two cases on the basis of the "actual physical intrusion by the judge into the juryroom." Such a comment clearly indicates the continuing vitality of *Burnetts* and *Werring.* Nor, in our opinion, does the last sentence of fn. 7 imply that intrusions into the jury room are to be treated like any other improper communication. In *Mata,* both of the communications were through the bailiff, and there was no question of intrusion into the jury room. The court merely stated that the fact that the two communications occurred before the jury retired to deliberate did not render the communications any less improper.

In *State v. Pawley,* 123 Ariz. 387, 599 P.2d 840 (App.1979), this court considered one written communication from judge to jury. The facts were these:

After the jury had retired, a note was sent from the jury to the trial judge. It read: "Can we open the plastic bag containing a letter, item 12–A?" The note was signed by the jury foreman.

A proceeding was conducted at which the judge, counsel for the state, counsel for the defendant and a court reporter were present. A transcript of the proceeding was made. After hearing arguments from counsel on the proposed response to the jury's note, the court sent a note to the jury reading: "Mr. [jury foreman], the answer is 'yes'; however, please return all contents in the plastic envelope. Stan Goodfarb, Judge." There is nothing in the record to indicate that Pawley was present at this time or

had been notified of the note from the jury, and he urges that these omissions are reversible error.

123 Ariz. at 389, 599 P.2d at 842. We held that the mere absence of the defendant during the communication was not reversible error. We do not consider the communication in *Pawley* even remotely similar to the intrusion which took place in this case. Nor do we believe that *Pawley* in any way undermines the holding of *Burnetts* and *Werring*. We had this to say about the rule of *Burnetts* and *Werring* and its application to the facts of the *Pawley* case:

> The rule that the defendant be given notice and an opportunity to appear originated in Arizona in those cases where the trial judge physically entered the jury room and orally communicated with the jury, the rationale being that *under such circumstances, the likelihood of the judge influencing the jury out of the presence of the defendant is so great that actual prejudice will be presumed. State v. Burnetts, supra; State v. Werring, supra.*
>
> . . . .
>
> The rule requiring that a defendant be given an opportunity to be present should not be mechanically applied to situations where the rationale for his presence does not exist. Here, the defendant's legal position was represented and protected by the presence of counsel. There was no personal interaction between judge and jury, with its attendant dangers of untoward influence. Finally, there was a meticulously maintained record which would reflect any prejudice to the defendant. Under these circumstances, we find no error in the procedure adopted by the trial court. . . .

123 Ariz. at 389–390, 599 P.2d at 842–843. (emphasis supplied). We see nothing in the foregoing to indicate dissatisfaction with, much less, modification of, the rule of *Burnetts* and *Werring*.

Even if we were to assume that *Pawley* is somehow applicable to cases of intrusion into the jury room, *each* of the three saving factors found in *Pawley* is absent here. In the present case there was, as already not-

ed, "personal interaction". Secondly, appellant's position was not "protected by the presence of counsel." Finally, there is no "meticulously maintained record".

█ It appears from the relevant minute entry in this case that although both counsel were notified that the jury would be recessed and waived their presence, neither counsel was notified that the judge would enter the jury room and engage in further discussion with the jury. Similarly there is no indication that they were subsequently notified that the judge had, in fact, entered the jury room and had a discussion with the jury. Generally, where the judge responds to issues of fact and law in the absence of defendant and his counsel, reversible error is committed and defendant is not required to show actual prejudice. *State v. Robin, supra.*

█ Even if the trial judge merely refused comment, that does not reduce his intrusion to harmless error. In *Burnetts,* there was no transcript of the conversation, but the trial judge reported that a juror asked whether they could write on a guilty verdict that they recommended leniency, and that he responded in the negative. The Arizona Supreme Court did not even discuss the correctness of the judge's statement, but held that

> where the communication concerned the case and not merely extraneous matters, we are of the opinion that the defendant is not required to show actual prejudice.

80 Ariz. at 212, 295 P.2d at 379. In *Werring,* the Arizona Supreme Court did not consider it important enough to mention the nature or correctness of the judge's statements. Therefore, even if the first half of the first communication was only a refusal to comment, it was still reversible error.

Moreover, in this case, in response to the second question from a juror, the judge went off the record and there is no indication of the length or nature of the discussion which occurred off the record. The lack of a complete record here is exceedingly troublesome. *See State v. Pawley, supra.*

Although the off-the-record discussion was preceded by an indication from the juror that he had a question that had nothing to do with the case, it is impossible to determine from the record whether, in fact, the question had nothing to do with the case. Further, even if the juror's initial question had nothing to do with the case, we cannot determine from the record whether there then ensued any further discussion of relevance to the case.

The deficit in the record in the present case makes it impossible to say that, beyond a reasonable doubt, there was no prejudice to the defendant, and therefore harmless error. *State v. Corrales,* 121 Ariz. 104, 588 P.2d 846 (App.1978). This factor distinguishes the present case from those cases where a complete record allowing the reviewing court to determine that the improper communication constituted harmless error. *State v. Mata, supra; State v. Davis,* 117 Ariz. 5, 570 P.2d 776 (App.1977); *State v. Cagle,* 124 Ariz. 276, 603 P.2d 547 (App.1979).

We will not belabor the point further. Suffice it to say that in every decision since *Werring* in which an appellate court of this state held that there was no reversible error in a judge-jury communication, *other than*

the judge's intrusion into the jury room, the court has distinguished *Burnetts* and *Werring* on precisely that ground. *See, e.g., State v. Lamb,* 116 Ariz. 134, 568 P.2d 1032 (1977); *State v. Lawrence,* 123 Ariz. 301, 599 P.2d 754 (1979); *State v. Davis, supra.* In short, *Burnetts* and *Werring* control, and mandate the conclusion that the trial judge's actions in this case constitute reversible error.

While we have focused on the first communication, we believe that the second communication, which was made with the consent of counsel and which was transcribed in full, was also reversible error, by the very fact that the judge entered the jury room.

Appellee's entire argument on the intrusion issue is that appellant was not prejudiced by either communication. We do not believe that the issue of prejudice is relevant under *Burnetts* and *Werring.* Among other jurisdictions which have considered the question, there are two views. Some states hold that the judge's intrusion into the jury room is per se reversible error, regardless of the intent or content of any communication.[1] About an equal number hold that such conduct is reversible error only if the defendant is prejudiced thereby.[2]

1. Representative of this view are:
   ALABAMA *Montgomery v. State,* 42 Ala.App. 345, 164 So.2d 717 (1964);
   *Graves v. State,* 377 So.2d 1129 (Ala.Cr.App. 1979), *cert. denied,* 377 So.2d 1130 (Ala.)
   INDIANA *Danes v. Pearson,* 6 Ind.App. 465, 33 N.E. 976 (1893);
   *Laine v. State,* 154 Ind.App. 81, 289 N.E.2d 141 (1972) (dicta).
   MICHIGAN *Zaitzeff v. Raschke,* 387 Mich. 577, 198 N.W.2d 309 (1972);
   *People v. Heard,* 388 Mich. 182, 200 N.W.2d 73 (1971);
   *People v. Olson,* 66 Mich.App. 197, 238 N.W.2d 579 (1975).
   MINNESOTA *Hoberg v. State,* 3 Minn. 181 (262) (1859);
   *State v. Mims,* 306 Minn. 159, 235 N.W.2d 381 (1975).
   NEVADA *State v. Graff,* 96 Nev. 474, 611 P.2d 196 (1980) (quoting *Burnetts*).
   NORTH DAKOTA *State v. Murphy,* 17 N.D. 48, 115 N.W. 84 (1908).
   WASHINGTON *State v. Wroth,* 15 Wash. 621, 47 P. 106 (1896).

WISCONSIN *Havenor v. State,* 125 Wis. 444, 104 N.W. 116 (1905).

2. Representative of this view are:
   ARKANSAS *Day v. State,* 185 Ark. 710, 49 S.W.2d 380 (1932);
   *Martin v. State,* 254 Ark. 1065, 497 S.W.2d 268 (1973).
   ILLINOIS *People v. Veal,* 58 Ill.App.3d 938, 16 Ill.Dec. 188, 374 N.E.2d 963 (1978).
   IOWA *State v. Olds,* 106 Iowa 110, 76 N.W. 644 (1898).
   KENTUCKY *Wireman v. Commonwealth,* 212 Ky. 420, 279 S.W. 633 (1926);
   *Smith v. Commonwealth,* 321 S.W.2d 786 (Ky.1959) (error waived by failure to object)
   MARYLAND *Brown v. State,* 236 Md. 505, 204 A.2d 532 (1964) (in judge's chambers).
   OKLAHOMA *Graham v. State,* 73 Okl.Crim. 337, 121 P.2d 308 (1942).
   PENNSYLVANIA *Commonwealth v. Knable,* 369 Pa. 171, 85 A.2d 114 (1952).
   TENNESSEE *Cartwright v. State,* 80 Tenn. 620 (1883).
   TEXAS *Rogers v. State,* 118 Tex.Cr. 123, 38 S.W.2d 784 (1931) (prejudice apparently required).

■ We are convinced that the per se rule is the better view and that the Arizona decisions are in accord.[3] The prejudice rule opens numerous problems and entails cumbersome and unsatisfactory post hoc hearings and determinations, at both the trial and appellate levels. Like the court in *Burnetts,*

> we feel that it would establish a dangerous precedent under the admitted facts not to reverse for a new trial.

80 Ariz. at 212, 295 P.2d at 380. In accordance with *Burnetts* and *Werring,* we hold that it is reversible error for the judge to enter the jury room after the jury has retired to deliberate, regardless of the intent or content of any ensuing communication, and regardless of the prejudice, or lack thereof, resulting. As pointedly stated in *Burnetts:*

There can be no question but that in the discharge of his official duty, the place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter.

80 Ariz. at 211, 295 P.2d at 378. Having disposed of this appeal on the first ground raised by appellant, we do not address the others.

The judgment is reversed and the matter remanded for a new trial.

EUBANK and HAIRE, JJ., concur.

---

**3.** The per se rule is also consistent with A.B.A. Standards for Criminal Justice, Trial by Jury (1980), § 15–3.7, which provides:

> Standard 15–3.7. Control over and relations with the jury
> (a) The trial judge should take appropriate steps ranging from admonishing the jurors to sequestration of them during trial, to ensure that the jurors will not be exposed to sources of information or opinion, or subject to influences, which might tend to affect their ability to render an impartial verdict on the evidence presented in court.
> (b) The trial judge should require a record to be kept of all communications received

from a juror or the jury after the jury has been sworn, and he or she should not communicate with a juror or the jury on any aspect of the case itself (as distinguished from matters relating to physical comforts and the like), except after notice to all parties and reasonable opportunity for them to be present.

The A.B.A. standard is a general rule applicable to all judge-jury communications. The rule reaffirmed herein is an application of the general rule to an especially improper type of judge-jury communication. The per se rule is, we believe, necessary to effectuate the principles underlying Standard 15–3.7.